UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                               :
UNITED STATES OF AMERICA    :         3:15 PO 38 (JGM)
                                               :
V.                                          :
                                               :
EDWARD SCHULTZ                    :
                                               :         DATE: AUGUST 18, 2015
--------------------------------------------------------- x

RULING ON DEFENDANT'S MOTION TO SUPPRESS

     On January 20, 2015, a Violation Notice (No. 4416601) was issued to defendant, charging him with "Entry to Areas Posted as Closed to the Public or Others (Trespass)" at the VA Hospital in West Haven, Connecticut, in violation of 38 C.F.R. § 1.218(b)(8), with the following "Statement of Probable Cause": "Flag on patient requires check-in[.] Schultz was on VA property without checking in with VA police.  Ticket for tres[]passing issued."  (Dkt. #1).  That same day, another Violation Notice (No. 4416603) was issued, charging defendant with "Possession of Knives which Exceed a Blade Length of 3 Inches[,]" in violation of 38 C.F.R. § 1.218(39), with the following "Statement of Probable Cause": "During frisk of Schultz, two knives were collected off of him[,]" one of which was in his pocket and the other of which was in his boots.  (Dkt. #3).[1]  A hearing was scheduled for May 4, 2015, at which defense counsel appeared, but not defendant; the Government dismissed the trespass charge but requested a hearing on the weapons charge. (Dkt. #9, at 1; see also Dkts. ##2, 4-6).  The hearing was rescheduled for July 13, 2015 (Dkt. #4), but such hearing was postponed after defendant filed his Motion to Suppress three days prior.  (Dkt. #7; see also

---

[1] The fine for this offense is $300.

Dkt. #8). The Government filed its brief in opposition two weeks later (Dkt. #9),[2] as to which defendant filed his reply brief one week later. (Dkt. #10).[3]

According to defendant, on January 20, 2015, he was at the VA Hospital in West Haven, at the outpatient pharmacy on the second floor, in order to pick up his prescription medicine, when it was reported to the VA Police that he was there without an escort, allegedly in breach of a "flag" in their computer system that he was supposed to check in with them before he entered the premises; as a result, three VA police officers responded to the pharmacy where he was detained for trespassing, and a safety pat down revealed two pocket knives on his person. (Dkt. #7, Brief at 1, 3). Defendant argues that the pat down was improper under Terry v. Ohio, 392 U.S. 1 (1968). (Id. at 2-3, 4-5). In addition, defendant argues that he was illegally seized because he did not commit a trespass under 38 C.F.R. § 1.218(b)(8), in that the outpatient pharmacy is not an area "posted as closed to the public or others (trespass)." (Id. at 3-4).

The Government argues in opposition that a "flag" notation was put on defendant's file pursuant to 38 C.F.R.§§ 17.1017(b)(1) & (d)(5) to "requir[e] a police escort" because a Protection Order had been issued by the Connecticut Superior Court in November 2013 to prohibit defendant from having any contact with a former girlfriend at her home or her place of employment, which is the VA Hospital. (Dkt. #9, at 3 & Exhs. A-B). According to the Government, upon the officers' arrival at the outpatient pharmacy, Sergeant Matthew Carroll

---

[2]Two exhibits were attached: copy of an Order of Protection["Protection Order"] issued to defendant by the Connecticut Superior Court in Milford on November 22, 2013 (Exh. A), and the VA Police Investigation Report, dated January 20, 2015 (Exh. B). (See also Dkt. #10, at 2, n.2 (differentiating between an Order of Protection and a Restraining Order under Connecticut law)).

[3]Two exhibits were attached: copy of the Violation Notice and Statement of Probable Cause, dated January 20, 2015, regarding the knives, and a copy of a letter, dated June 9, 2015, from the Assistant United States Attorney to defense counsel.

explained to defendant that he had been given an order to check in with the VA Police upon arrival at the facility and that no weapons of any kind were allowed on the premises; a safety frisk revealed one knife in his pocket and another in his boot, one of which had a four inch blade and the other a three inch blade.  (Id. at 3-4 & Exh. B).  The Government argues that no evidentiary hearing is necessary on the Motion to Suppress (id. at 4-6), that the VA Police had reasonable suspicion to initiate an investigative stop under Terry, given their concern that he was going to violate the Protection Order  (id. at 2, 6-10), and that reasonable suspicion, as required for an investigatory stop, can rest on a reasonable mistake of law. (Id. at 10-12).

In his reply brief, defendant argues that no trespass ever occurred so that there were no grounds to stop him (Dkt. #10, at 3), that the Protection Order mandated that defendant relinquish his weapons so there was no need for an immediate frisk of defendant (id. at 3-4), and that the mistake of law was not objectively reasonable.  (Id. at 5-7).

## I.  DISCUSSION

Government's counsel is correct that no evidentiary hearing is necessary, insofar as defendant's Motion to Suppress is based purely on a question of law, namely that because the charge for trespass was dismissed, the brief detention by the VA Police and the safety pat down were illegal. (Dkt. #9, at 5; see also id. at 4-6).[4]

In its brief in opposition, the Government argues that the "VA Police reasonably believed that, on January 20, 2015, . . . defendant intended to engage in criminal activity by violating a State of Connecticut [Protection] Order, issued November 22, [2013]." (Dkt. #9, at 2).  In his reply brief, defendant describes this "theory" as "both novel and not supported

---

[4]Defendant makes no mention of an evidentiary hearing in either of his briefs.  (Dkt. #7, Brief & Dkt. #10).

by the VA Police narrative of . . . defendant's detention, search and ultimate citation for trespass." (Dkt. #10, at 2).  Defendant emphasizes that while "the dismissal of the trespass charge is probative of its lack of merit, it is not the dismissal upon which [d]efendant relies[,]" but "[r]ather . . . that the trespass simply never occurred nor was there any other reasonable suspicion of other criminal activity."  (Id. at 3).  In addition, defendant argues that the VA Police "having documented the stop as initially being for a trespass, cannot now advance a different theory just because the original theory fails."  (Id.).

Contrary to defendant's argument, defendant was "flagged" in the VA's files because of the Protection Order, which explicitly provided that defendant allegedly possessed one or more firearms, allegedly held a permit to carry a pistol or revolver, and allegedly possessed ammunition.  (Dkt. #9, Exh. 1).  Defendant is correct that under the Protection Order, defendant was required to "[s]urrender or transfer all firearms and ammunition[,]" but he was also required to avoid contact with his former girlfriend, who was employed at the VA Hospital, at her home or workplace.  (Id.).  As a result, he was required to "check in" with the VA Police when he arrived at the VA Hospital and have a police escort with him.  He was alone in the outpatient pharmacy,[5] in violation of that directive, and given the clear language of the Protection Order regarding defendant's not too distant access to weapons,[6] the three VA Police had "reasonable suspicion supported by articulable facts that criminal activity 'may

---

[5]As defendant points out, under the Protection Order, defendant was required to "[p]articipate in mental health evaluation and treatment."  (Dkt. #10, at 3 (quoting Protection Order)).

[6]Defendant emphasizes that the Protective Order was more than one year old and merely indicated that defendant "allegedly" possessed weapons. (Dkt. #10, at 4).   On the Protection Order, all three boxes were checked – that defendant allegedly possessed one or more firearms, he allegedly held a permit to carry a pistol or revolver, and he allegedly possessed ammunition.  These are not allegations to be taken lightly by law enforcement personnel.

be afoot,' even if [the officers] lack[ed] probable cause." U.S. v. Sokolow, 490 U.S. 1, 7 (1989); see also Terry, 392 U.S. at 21-22, 26-31. As the U.S. Supreme Court explained in Terry:

> The [police] officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. And in determining whether the [police] officer acted reasonably in such circumstances, due weight must be given, not to his [or her] inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he [or she] is entitled to draw from the facts in light of his [or her] experience.

392 U.S. at 27 (multiple citations omitted)(emphasis added). Thus, under the "totality of the circumstances," the Terry stop and frisk were reasonable. Sokolow, 490 U.S. at 7-8 (citations omitted). These three VA police officers acted on more than "an unparticularized suspicion or 'hunch[,']" but rather had "reason to believe that [they were] dealing with an armed and dangerous individual" who could place his former girlfriend, who obtained a Protective Order against him, "in danger." 392 U.S. at 27. Moreover, as the Government points out (Dkt. #9, at 10-12), the U.S. Supreme Court held last year that police officers, acting as reasonable persons, can

> make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

Heien v. North Carolina, 135 S. Ct. 530, 536 (2014). As discussed above, the VA Police reasonably thought, based upon the Protection Order, that the entire VA complex was off

5

limits to defendant, in that his former girlfriend was employed there; as their mistake of law was reasonable, there was reasonable justification for the VA Police to conduct the Terry stop, particularly in light of the representations in the Protection Order.

Accordingly, for the reasons stated above, defendant's Motion to Suppress (Dkt. #7) is denied.

The bench trial is scheduled for **October 5, 2015, at 11:00 a.m., in Courtroom 4**, 141 Church Street, New Haven, CT.

Dated this 18th day of August, 2015 at New Haven, Connecticut.

    /s/ Joan G. Margolis, USMJ
    Joan Glazer Margolis
    United States Magistrate Judge